**ORIGINAL**

SEALED

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR - 9 2024

CLERK, U.S. DISTRICT COURT
By_____CK_____
Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* PATRICIA LESKO, <br><br> **Plaintiff and Relator,** <br><br> vs. <br><br> UNIVERSITY OF DALLAS; HENDRIX COLLEGE; OUACHITA BAPTIST UNIVERSITY; THE MASTERS UNIVERSITY AND SEMINARY; HUSSON UNIVERSITY; CONCORDIA UNIVERSITY; OKLAHOMA BAPTIST UNIVERSITY; OKLAHOMA CHRISTIAN UNIVERSITY INC.; MENTAL HEALTH COOPERATIVE INC.; BENNINGTON COLLEGE CORPORATION; BELOIT COLLEGE; WEST VIRGINIA WESLEYAN COLLEGE; SPRING HILL COLLEGE; MARCUS JEWISH COMMUNITY CENTER OF ATLANTA; THE JEWISH COMMUNITY CENTER OF GREATER KANSAS CITY; EASTERN NAZARENE COLLEGE; UNIVERSITY OF JAMESTOWN; LIMESTONE UNIVERSITY; EDUCATION SUCCESS NETWORK, INC.; | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO.** <br><br> **3 -24CV0865-K** <br><br> **FILED UNDER SEAL** |

COMPLAINT                                                                                                        1

|                                    |    |
|------------------------------------|----|
| **AND NATIONAL**                   | §  |
| **ASSOCIATION ON DRUG**            | §  |
| **ABUSE PROBLEMS INC.,**           | §  |
|                                    | §  |
| **Defendants.**                    | §  |

## FALSE CLAIMS ACT COMPLAINT FILED UNDER SEAL
## UNDER 31 U.S.C. § 3730(B)(2)

The United States of America *ex rel.* Patricia Lesko files this action against

Defendants University of Dallas, Hendrix College, Ouachita Baptist University,

The Masters University and Seminary, Husson University, Concordia

University, Oklahoma Baptist University, Oklahoma Christian University Inc.,

Mental Health Cooperative Inc, Bennington College Corporation, Beloit

College, West Virginia Wesleyan College, Spring Hill College, Marcus Jewish

Community Center of Atlanta Inc., The Jewish Community Center of Greater

Kansas City, Eastern Nazarene College, University of Jamestown, Limestone

University, Education Success Network, Inc., and National Association on

Drug Abuse Problems Inc., and in support thereof alleges the following:

### I.    NATURE OF THE ACTION

1.    This action arises out of Defendants' violation of the False Claims

Act (the "FCA") by falsely certifying that they were eligible to receive Paycheck

Protection Loans based on an inaccurate reporting of the number of employees

whose paychecks would supposedly be protected and by knowingly concealing

their ineligibility to receive forgiveness of their obligations to repay those loans. The certification and acts of concealment were material facts relied upon by the Small Business Administration ("SBA") in approving the loan applications and loan forgiveness applications. Defendants' misrepresentations either provided them with more money than they were entitled to receive, or provided them with money that they were not entitled to receive in any amount because they did not meet the required size qualifications set out in the CARES Act.

2.      Defendants are liable for (1) the amount of PPP funds received by them for which they were ineligible; (2) the amount of loan forgiveness received by them over and above the amount of the initial loan received; and (3) the loan processing fees paid by the SBA to a lender for the loans disbursed and forgiven due to the fraudulent conduct alleged herein, as well as for the additional penalties enumerated in the False Claims Act.

## II.   PARTIES

3.      Relator Patricia Lesko is a United States citizen and a resident of Michigan. She brings this action as an original source based upon direct and unique information she has obtained based in part on her experience as an investigative reporter. To her knowledge, the information contained herein has not been publicly disclosed.

4.      The United States is the real plaintiff in interest with respect to the

claims asserted in this matter. The defrauded loan programs are administered and supervised by the Small Business Administration, an independent, cabinet-level agency of the Federal Government.

5.    Defendant University of Dallas is a Texas 501(c)(3) nonprofit organization that has its principal place of business at 1845 Northgate Drive, Irving, Texas 75062-4736. No service is requested at this time.

6.    Defendant Hendrix College is an Arkansas 501(c)(3) nonprofit organization that has its principal place of business at 1600 Washington Ave., Conway, Arkansas 72032. No service is requested at this time.

7.    Defendant Ouachita Baptist University is an Arkansas 501(c)(3) nonprofit organization that has its principal place of business at 410 Ouachita Street, Arkadelphia, Arkansas 71998. No service is requested at this time.

8.    Defendant The Masters University and Seminary is a California 501(c)(3) nonprofit organization that has its principal place of business at 21726 Placerita Canyon Road, Santa Clara, California 91321. No service is requested at this time.

9.    Defendant Husson University is a Maine 501(c)(3) nonprofit organization that has its principal place of business at 1 College Circle, Bangor, Maine 04401. No service is requested at this time.

10.    Defendant Concordia University is a Nebraska 501(c)(3) nonprofit organization that has its principal place of business at 800 North Columbia Avenue, Seward, Nebraska 68434. No service is requested at this time.

11.    Defendant Oklahoma Baptist University is an Oklahoma 501(c)(3) nonprofit organization that has its principal place of business at 500 W. University, Shawnee, Oklahoma 74804. No service is requested at this time.

12.    Defendant Oklahoma Christian University is an Oklahoma 501(c)(3) nonprofit organization that has its principal place of business at 2501 East Memorial Road, Oklahoma City, Oklahoma 73013. No service is requested at this time.

13.    Defendant Mental Health Cooperative Inc. is a Tennessee 501(c)(3) nonprofit organization that has its principal place of business at 275 Cumberland Boulevard, Nashville, Tennessee 37228. No service is requested at this time.

14.    Defendant Bennington College Corporation is a Vermont 501(c)(3) nonprofit organization that has its principal place of business at 1 College Drive, Bennington, Vermont 05201. No service is requested at this time.

15.    Defendant Beloit College is a Wisconsin 501(c)(3) nonprofit organization that has its principal place of business at 700 College Street, Beloit, Wisconsin 53511. No service is requested at this time.

16.     Defendant West Virginia Wesleyan College is a West Virginia 501(c)(3) nonprofit organization that has its principal place of business at 59 College Avenue, Buckhannon, West Virginia 26201. No service is requested at this time.

17.     Defendant Spring Hill College is an Alabama 501(c)(3) nonprofit organization that has its principal place of business at 4000 Dauphin Street, Mobile, Alabama 36608. No service is requested at this time.

18.     Defendant Marcus Jewish Community Center of Atlanta Inc. is a Georgia 501(c)(3) nonprofit organization that has its principal place of business at 5342 Tilly Mill Road, Dunwoody, Georgia 30338. No service is requested at this time.

19.     Defendant The Jewish Community Center of Greater Kansas City is a Kansas 501(c)(3) nonprofit organization that has its principal place of business at 5801 West 115th Street, Overland Park, Kansas 66211. No service is requested at this time.

20.     Defendant Eastern Nazarene College is a Massachusetts 501(c)(3) nonprofit organization that has its principal place of business at 23 East Elm Avenue, Quincy, Massachusetts 02170. No service is requested at this time.

21. Defendant University of Jamestown is a North Dakota 501(c)(3) nonprofit organization that has its principal place of business at Jamestown, North Dakota 58405. No service is requested at this time.

22. Defendant Limestone University is a South Carolina 501(c)(3) nonprofit organization that has its principal place of business at 1115 College Drive, Gaffney, South Carolina 29340. No service is requested at this time.

23. Defendant Education Success Network, Inc. is a New York 501(c)(3) nonprofit organization that has its principal place of business at 4 Lakeview Park, Rochester, New York 14613. No service is requested at this time.

24. Defendant National Association on Drug Abuse Problems Inc. is a New York 501(c)(3) nonprofit organization that has its principal place of business at 355 Lexington Avenue, 2nd Floor, New York, New York 10017. No service is requested at this time.

### III.  JURISDICTION AND VENUE

25. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and 31 U.S.C. §§ 3732(a) and 3730(b), which provide this Court with original jurisdiction to hear a *qui tam* action. Relator is an "original source" and brings this action in the name of the United States as contemplated by the FCA, 31 U.S.C. §§ 3729-33.

26.    Personal jurisdiction and venue are proper in this district under 28 U.S.C. § 1391(c) and 31 U.S.C. § 3732(a) because at least one Defendant transacts business in the Northern District of Texas, because acts prohibited by 31 U.S.C.§ 3729 have been committed by at least one Defendant in this judicial district, and because all Defendants have sufficient minimum contacts with the United States.

27.    There has been no public disclosure of the "allegations or transactions" in this Complaint, including in any criminal, civil, or administrative hearing, nor in any congressional, administrative or General Accounting Office or Auditor General's report, hearing, audit, or investigation, or in the news media. As detailed below, Relator has direct and personal knowledge of such allegations and transactions. To the extent that any such facts herein become public, Relator voluntarily provided disclosures of these allegations and transactions to the United States pursuant to FCA requirements prior to such public release or knowledge.

## IV.    FACTS

### A.    The CARES Act and PPP Loans

28.    The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") is a law intended to address the economic effects of the COVID-19 pandemic in the United States.

29.    The CARES Act led to, among other things, the Paycheck Protection Program ("PPP"). *See* CARES Act, No. 116-136 (March 27, 2020). The PPP is a loan program that was designed to provide eligible small businesses low-interest loans that would be guaranteed by the SBA with support from the Department of the Treasury.

30.    The PPP provided small businesses with funds to pay up to 24 weeks of payroll costs, including benefits. While similar in most ways to existing SBA loan programs, the CARES Act suspended the ordinary requirement contained in the Small Business Act, 15 U.S.C. § 632(h), that borrowers must be unable to obtain credit elsewhere. The PPP section of the CARES Act also expanded eligibility for SBA loans beyond the limitations of the Small Business Act,15 U.S.C. §§ 632, 636.

31.    To demonstrate the amount of the loan to which they would be entitled, PPP applicants were asked to report their average monthly payroll and their total number of employees. Payroll costs used to calculate loan amounts (and, later, loan forgiveness amounts) were capped at $100,000 per employee per year. For any employee who made over $100,000 per year, the loan calculation required calculation of payroll costs as if that employee made $100,000. *See* Paycheck Protection Program Borrower Application Form.

32.    As originally enacted, the CARES Act made the following entities

eligible to apply for PPP funding if they were affected by COVID-19:

    a.     any for-profit small business concern;

    b.     any for-profit business, non-profit association organized under 26 U.S.C. § 501(c)(3), veterans' association organized under 26 U.S.C. § 501(c)(19), or tribal small businesses that met certain size requirements; and

    c.     certain accommodations and food-service businesses that employed fewer than 500 persons per location.

33.    To apply for a PPP loan, entities submitted their First Draw Borrower Application Form to a federally insured depository institution, credit union, or Farm Credit System, of their choice. That chosen lender processed the applications and, if approved, funded the loans. Such lenders were "deemed to have been delegated authority by the [SBA] Administrator to make and approve covered loans." CARES Act § 1102(a)(2)(36)(F)(ii).

34.    The SBA guaranteed 100 percent of the outstanding balance of these loans, and this guarantee was backed by the full faith and credit of the United States. 15 U.S.C. § 636(a)(2)(F).

35.    The SBA also paid processing fees to each lender that funded PPP loans. These processing fees were based on the size of the loan funded. For first draw PPP loans, those fees were five percent for loans up to $350,000, three

percent for loans between $350,000 and $2,000,000, and one percent for loans of at least $2,000,000.[1] For second draw loans, the processing fees were fifty percent or $2500, whichever was less, for loans of not more than $50,000; five percent for loans between $50,000 and $350,000; and three percent for loans above $350,000.

36.    Most loans made under the PPP have been forgiven. As of January 2023, NPR analyzed publicly available data and found that 92 percent of PPP loans, including loans to companies that have wealthy owners, had been forgiven.    *See*    https://www.npr.org/2023/01/09/1145040599/ppp-loan-forgiveness, last accessed on November 19, 2023.

37.    To be eligible for loan forgiveness, PPP borrowers were required to complete SBA Form 3508, 2508S, or 3508EZ to calculate eligible payroll and nonpayroll costs that qualified to be forgiven. To achieve forgiveness of their loans, borrowers were required to certify that the amount for which forgiveness was requested:

a.    did not exceed the principal amount of the PPP loan;

b.    had been used to pay business costs that were eligible for forgiveness (payroll costs to retain employees; business mortgage interest

---

[1] For first-draw loans made on or after December 27, 2020, loans of up to $50,000 were treated differently. Lenders were entitled to receive fifty percent of the loan or $2500, whichever was less, for such loans made after that date.

payments; business utility payments; covered operations expenditures; covered property damages costs; covered supplier costs; or covered worker protection expenditures);

c.    included all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

d.    included payroll costs equal to at least 60 percent of the forgiveness amount; and,

e.    for any owner-employee who had an ownership stake of 5 percent or more, or for any self-employed individual or general partner, did not exceed more than 2.5 months' worth of compensation received during the year used to calculate the loan amount, capped at $20,833 per individual in total across all businesses.

Paycheck Protection Program Loan Forgiveness Application Form 2508, Revised July 30, 2021.

38.    Borrowers were further required to certify that they had submitted all required documentation to their Lender, verifying payroll costs, the existence of obligations and service prior to February 15, 2020, and eligible business mortgage-interest payments, rent or lease payments, and utility payments. *Id.*

39.    Finally, borrowers were not entitled to forgiveness of a PPP loan unless they certified that all information provided in the loan application,

supporting documents, and other forms was true and correct in all material respects. *Id.*

## B.   SBA Size Limitations on Eligible Participants

40.   As noted above, the CARES Act provided that only "businesses" and certain types of non-profit organizations – namely, 501(c)(3) and 501(c)(19) companies – were eligible to receive PPP funding. Under SBA rules, "businesses" are defined as operating businesses located in the United States that are "organized for profit." 13 CFR 120.100. In this case, Defendants are not businesses, but are 501(c)(3) organizations that were eligible for the PPP so long as they met the size requirements. These requirements were not only material, but vital to the PPP because the purpose of the loan program was to help small businesses and organizations pay their employees during the pandemic.

41.   As 501(c)(3) non-profit organizations, Defendants are required to file a Form 990 each year with the IRS to demonstrate their tax-exempt status. Among other things, Form 990 includes a total number of employees for each organization per year. The number of employees on Form 990 includes all individual shown on the organization's W-3, transmittal of wage and tax statements. In other words, each individual who received a paycheck from the non-profit is counted on the Form 990.

42.   In order to qualify for the first round of the program loans, 501(c)(3) nonprofit organizations were required to either have 500 or fewer employees or meet the SBA employee-based size standards for the industry in which they operated, whichever was greater. None of the industries in which Defendants operated had size standards higher than 500. Therefore, to receive a "first draw" PPP loan, each Defendant was required to certify that it had 500 or fewer employees. 15 U.S.C. § 636(a)(36)(D)(i)(I).

43.   To calculate their number of employees, PPP first draw applicants were permitted to use either 1) the average number of employees over the 12 previous months, 2) the average number of employees for calendar year 2019, or 3) their average number of employees for each pay period during the 12 calendar months prior to the loan applications. Potential borrowers were required to count full-time, part-time, temporary, and furloughed employees, as well as employee residing outside of the United States. 13 C.F.R. 121.106(b); SBA PPP FAQ 14. Second draw applicants could use the average employment over the time period used to calculate their loan amount or their average number of employees for each pay period during the 12 calendar months prior to the loan applications.

COMPLAINT                                                                    14

44.     Congress originally provided $349 billion to fund the PPP, but those funds were depleted within weeks of the CARES Act's effective date, on April 16, 2020. On April 24, 2020, an additional $320 billion was allocated to the PPP.

45.     At the end of 2020, in the Consolidated Appropriations Act of 2021, Congress further expanded the PPP by adding an additional $284.5 billion in funding, allowing certain borrowers to obtain "second draw" loans. By May 5, 2021, these additional funds had been depleted.

46.     To be eligible for a second draw loan, entities were required to have received a first draw loan that was used in full for eligible expenses, have no more than 300 employees, and demonstrate a 25% reduction in gross receipts between comparable quarters in 2019 and 2020. 15 U.S.C. § 636(a)(37).

47.     While the average number of employees in a given period and the total number of employees over a year may vary due to hiring needs and employee turnover, Defendants' reported employee numbers vary between their Form 990s and their PPP applications to such an extent as to indicate fraud in the loan applications. Defendants' PPP applications claim that they averaged only a small percentage of their total yearly employees over the relevant period or, in some instances, claim that they averaged more employees than they employed in total.

48.    By undercounting employees, these organizations fraudulently represented that they met the size standard required by the PPP program for either a first or second draw loan (or both), when in fact their employee numbers disqualified them from receiving such loans and, later, loan forgiveness. Organizations that overcounted their employees, on the other hand, falsely inflated the amount of PPP money to which they were entitled because that amount was based, in large part, on the number of persons employed.

### C.    The False Claims Act

49.    The False Claims Act, or FCA, as set out in 31 U.S.C. § 3729(a)(1), prohibits knowingly presenting, or causing to be presented, or conspiring to present to the United States any false or fraudulent claim for payment. Further, as set out in 31 U.S.C. § 3729(a)(2), the FCA prohibits knowingly presenting, causing to be presented, or conspiring to make or use a false record or statement to obtain payment or approval for a false or fraudulent claim.

50.    Each violation of the FCA is a violation of federal law that is punishable by three times the amount of the actual damages sustained by the government, as well as a civil penalty of between $13,508 and $27,018 per claim for violations that occurred after November 1, 2015, and for which penalties are assessed after January 30, 2023.

51.     Under the FCA, the term "knowingly" means that a person, with respect to information, (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information. The FCA does not require proof of a specific intent to defraud.

52.     Defendants' actions, described below, constitute the submission of false and fraudulent claims in violation of the FCA. Defendants submitted false loan applications, improperly received PPP funds, and improperly received forgiveness of their loans by intentionally misrepresenting the number of employees they had. In total, these Defendants caused losses to the government of over sixty-five million dollars.

## D.     The Defendants' Schemes to Wrongfully Apply for, Receive, and Obtain Forgiveness for PPP Loans

### a.   Undercounting Employees for First Draw Loans

53.     To qualify for a first draw loan, these defendants had to certify that they had 500 or fewer employees during the applicable time period. The maximum loan amount was the lesser of two and a half times the applicant's average monthly payroll costs or $10,000,000.

54.     Defendant University of Dallas is a 501(c)(3) entity that reported 1453 employees on its Form 990 for the 2019 calendar year, but it claimed an average of only 424 employees on its PPP loan application. It obtained a first

COMPLAINT                                                                                    17

draw PPP loan in the amount of $5,820,700 on April 11, 2020. The loan was forgiven in its entirety, in the amount of $5,879,704, on April 23, 2021. As a result of this loan, Prosperity Bank, the originating lender, received a one percent processing fee from the SBA in the amount of $58,207.

55.    Defendant Hendrix College is a 501(c)(3) entity that reported 1184 employees on its Form 990 for the 2019 calendar year, but it claimed an average of only 448 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $4,829,200 on May 6, 2020. The loan was forgiven in its entirety, in the amount of $5,046,753, on August 23, 2021. As a result of this loan, Southern Bancorp, the originating lender, received a one percent processing fee from the SBA in the amount of $48,292.

56.    Defendant Ouachita Baptist University is a 501(c)(3) entity that reported 1311 employees on its Form 990 for the 2019 calendar year, but it claimed an average of only 441 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $4,049,700 on April 9, 2020. The loan was forgiven in its entirety, in the amount of $4,096,743, on June 9, 2021. As a result of this loan, Southern Bancorp, the originating lender, received a one percent processing fee from the SBA in the amount of $40,497.

57.    Defendant The Masters University and Seminary is a 501(c)(3) entity that reported 1243 employees on its Form 990 for the 2019 calendar year,

but it claimed an average of only 318 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $4,347,800 on August 8, 2020. The loan was forgiven in its entirety, in the amount of $4,382,820, on June 9, 2021. As a result of this loan, United Business Bank, the originating lender, received a one percent processing fee from the SBA in the amount of $43,478.

58.    Defendant Husson University is a 501(c)(3) entity that reported 1484 employees on its Form 990 for the 2019 calendar year, but it claimed an average of only 492 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $5,965,000 on April 14, 2020. The loan was forgiven in its entirety, in the amount of $6,143,618, on April 7, 2023. As a result of this loan, Bangor Savings Bank, the originating lender, received a one percent processing fee from the SBA in the amount of $59,650.

59.    Defendant Concordia University is a 501(c)(3) entity that reported 1582 employees on its Form 990 for the 2019 calendar year, but it claimed an average of only 325 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $3,285,100 on April 5, 2020. The loan was forgiven in its entirety, in the amount of $3,323,426, on June 9, 2021. As a result of this loan, Jones Bank, the originating lender, received a one percent processing fee from the SBA in the amount of $32,851.

60.    Defendant Oklahoma Baptist University is a 501(c)(3) entity that reported 1233 employees on its Form 990 for the 2019 calendar year, but it claimed an average of only 402 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $4,370,400 on April 8, 2020. The loan was forgiven in its entirety, in the amount of $4,420,330, on June 9, 2021. As a result of this loan, BancFirst, the originating lender, received a one percent processing fee from the SBA in the amount of $43,704.

61.    Defendant Oklahoma Christian University Inc. is a 501(c)(3) entity that reported 1368 employees on its Form 990 for the 2019 calendar year, but it claimed an average of only 440 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $4,211,700 on April 6, 2020. The loan was forgiven in its entirety, in the amount of $4,260,603, on June 9, 2021. As a result of this loan, MidFirst Bank, the originating lender, received a one percent processing fee from the SBA in the amount of $42,117.

62.    Defendant Mental Health Cooperative Inc. is a 501(c)(3) entity that reported 853 employees on its Form 990 for the 2019 calendar year, but it claimed an average of 500 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $7,230,530 on April 30, 2021. The loan was forgiven in its entirety, in the amount of $7,289,780, on March 3, 2022. As

a result of this loan, Fifth Third Bank, the originating lender, received a one percent processing fee from the SBA in the amount of $72,305.

63.    Defendant Bennington College Corporation is a 501(c)(3) entity that reported 1084 employees on its Form 990 for the 2019 calendar year, but it claimed an average of only 370 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $5,945,442 on April 12, 2020. The loan was forgiven in its entirety, in the amount of $6,023,558, on August 10, 2021. As a result of this loan, TD Bank, the originating lender, received a one percent processing fee from the SBA in the amount of $59,454.

64.    Defendant Beloit College is a 501(c)(3) entity that reported 1402 employees on its Form 990 for the 2019 calendar year, but it claimed an average of only 421 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $4,687,300 on April 14, 2020. The loan was forgiven in its entirety, in the amount of $4,718,187, on October 14, 2021. As a result of this loan, PNC Bank, the originating lender, received a one percent processing fee from the SBA in the amount of $46,873.

65.    Defendant West Virginia Wesleyan College is a 501(c)(3) entity that reported 904 employees on its Form 990 for 2019 but claimed an average of only 315 employees on its PPP loan application. It obtained a first draw PPP loan in the amount of $2,684,300 on April 11, 2020. The loan was forgiven in its

entirety, in the amount of $,2714,085, on June 9, 2021. As a result of this loan, Huntington National Bank, the originating lender, received a one percent processing fee from the SBA in the amount of $26,843.

### b. Undercounting Employees for Second Draw Loans

66.    To qualify for a second draw loan, applicants had to certify that they had 300 or fewer employees during the applicable time period. The maximum loan amount was the lesser of two and a half times the applicant's average monthly payroll costs or $2,000,000.

67.    Defendant Spring Hill College is a 501(c)(3) entity that reported 720 employees on its Form 990 for 2020 but claimed an average of only 297 employees on its PPP loan application. It obtained a second draw PPP loan in the amount of $2,000,000 on January 23, 2021. The loan was forgiven in its entirety, in the amount of $2,022,958, on January 6, 2022. As a result of this loan, ServisFirst Bank, the originating lender, received a three percent processing fee from the SBA in the amount of $60,000.

68.    Defendant Marcus Jewish Community Center of Atlanta Inc. is a 501(c)(3) entity that reported 658 employees on its Form 990 for 2020 but claimed an average of only 291 employees on its PPP loan application. It obtained a second draw PPP loan in the amount of $2,000,000 on February 3, 2021. The loan was forgiven in its entirety, in the amount of $2,026,222, on May

24, 2022. As a result of this loan, Affinity Bank, the originating lender, received a three percent processing fee from the SBA in the amount of $60,000.

69.     Defendant Jewish Community Center of Greater Kansas City is a 501(c)(3) entity that reported 665 employees on its Form 990 for 2020 but claimed an average of only 293 employees on its PPP loan application. It obtained a second draw PPP loan in the amount of $1,547,120 on February 3, 2021. The loan was forgiven in its entirety, in the amount of $1,562,718, on February 16, 2022. As a result of this loan, AMB Bank, the originating lender, received a three percent processing fee from the SBA in the amount of $46,413.

70.     Defendant Eastern Nazarene College is a 501(c)(3) entity that reported 576 employees on its Form 990 for 2020 but claimed an average of only 248 employees on its PPP loan application. It obtained a second draw PPP loan in the amount of $1,999,995 on February 26, 2021. The loan was forgiven in its entirety, in the amount of $2,018,777, on February 7, 2022. As a result of this loan, Rockland Trust Company, the originating lender, received a three percent processing fee from the SBA in the amount of $59,999.

71.     Defendant University of Jamestown is a 501(c)(3) entity that reported 921 employees on its Form 990 for 2020 but claimed an average of only 276 employees on its PPP loan application. It obtained a second draw PPP loan in the amount of $2,000,000 on February 14, 2021. The loan was forgiven in its

entirety, in the amount of $2,011,555 on September 16, 2021. As a result of this loan, Dacotah Bank, the originating lender, received a three percent processing fee from the SBA in the amount of $60,000.

72.     Defendant Limestone University is a 501(c)(3) entity that reported 844 employees on its Form 990 for 2020 but claimed an average of only 288 employees on its PPP loan application. It obtained a second draw PPP loan in the amount of $2,000,000 on March 5, 2021. The loan was forgiven in its entirety, in the amount of $2,016,777, on January 13, 2022. As a result of this loan, First National Bank of Pennsylvania, the originating lender, received a three percent processing fee from the SBA in the amount of $60,000.

a. **Overcounting Employees to Increase Loan Amounts**.

73.     Because PPP loan amounts were based on average monthly payroll amounts, and because payroll costs per employee were limited to $100,000 per year, applicants who overstated the number of employees they had illegitimately increased the loan amounts they received, and for which they were forgiven, over that to which they were legally entitled.

74.     Defendant Education Success Network, Inc. is a 501(c)(3) entity that reported 41 total employees on its Form 990 for 2019 but claimed to have an average of 176 employees on its first PPP loan application. It obtained a first draw PPP loan in the amount of $1,482,500 on April 15, 2020. If Defendant had

properly reported that it had, at most, 41 employees, even if each of those employees made $100,000 or more, Education Success Network would have only been entitled to receive a maximum loan amount of $854,132. The first draw loan was forgiven in its entirety, in the amount of $1,499,072, on June 10, 2021. As a result of this loan, Citizens Bank, NA, the originating lender, received a three percent processing fee from the SBA in the amount of $44,475.

75.    Education Success Network, Inc. also obtained a second draw PPP loan in the amount of $1,482,500 on April 1, 2021. On its application for that loan, Education Success Network, Inc. again claimed to have an average of 176 employees, although its 2020 Form 990 revealed that it had a total of 29 employees in that calendar year. If Defendant had properly reported that it had, at most, 29 employees, even if each of those employees made $100,000 or more, Education Success Network would have only been entitled to receive a maximum loan amount of $604,142. Its second draw loan was forgiven in its entirety, in the amount of $1,495,822, on March 3, 2022. As a result of these loans, Citizens Bank, NA, the originating lender, received a three percent processing fee from the SBA for each loan in the total amount of $44,475.

76.    Defendant National Association on Drug Abuse Problems Inc. is a 501(c)(3) entity that reported 182 employees on its Form 990 for 2019 but claimed to have an average of 333 employees on its PPP loan application. It

obtained a first draw PPP loan in the amount of $3,197,222 on April 12, 2020. On information and belief, the actual salaries of the, at most, 182 employees would not have supported this loan amount. The loan was forgiven in its entirety, in the amount of $3,264,275, on May 17, 2022. As a result of this loan, TD Bank, the originating lender, received a one percent loan-processing fee from the SBA in the amount of $31,972.

### a. The Defendants' Applications Were Fraudulent.

77.    In order to receive these loans, each Defendant signed a loan application certifying that it was "eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration" and that "current economic uncertainty makes this loan necessary to support the ongoing operations of the Applicant." And, in order to have their loans forgiven, each Defendant certified that it had "complied with all requirements in the Paycheck Protection Program Rules." Each of these statements was false.

78.    Most of the Defendants intentionally underreported the average number of employees they had, as shown by their true total number of employees, to "meet" the size standards set forth by the CARES Act. The PPP required 501(c)(3) organizations to have 500 or fewer employees in order to receive a first draw loan and to have 300 or fewer employees in order to receive

a second draw loan. Defendants who had more employees than allowed took loans to which they were not entitled, received loan forgiveness to which they were not entitled, and caused the SBA to pay loan-processing fees to which the originating lenders were not entitled.

79.    Two Defendants intentionally overreported the average number of employees they had, as shown by their true total number of employees, so that they could receive larger loan amounts than those to which they were truly entitled. By so doing, they took loan amounts to which they were not entitled, received loan forgiveness amounts to which they were not entitled, and caused the SBA to pay loan-processing fee amounts to which the originating lenders were not entitled.

80.    The certifications to the SBA and the lenders were material because the SBA relied on the honesty of applicants to process PPP loans as quickly as possible to get relief to American businesses during the pandemic. Because the PPP funds were repeatedly depleted, Defendants' false certifications not only likely prohibited eligible businesses from receiving funds but also deprived the United States of the millions of dollars in loan and interest repayments to which it would have been entitled if Defendants had not wrongly applied for and received loan forgiveness by falsely claiming to have followed all PPP rules.

### E.    Relator's Knowledge of the Fraud

81.    Relator Patricia Lesko is an independent investigative journalist who has worked to expose fraud and corruption for more than 14 years. In 2020, while writing a data-driven piece for The Ann Arbor Independent, of which she is the editor, Ms. Lesko familiarized herself with PPP loan eligibility requirements and consulted with the president of a local bank to learn about and understand the PPP loan process. She also developed a proprietary dataset combining information about PPP loan-application data, NAICS code-size standards, and non-profit status.

82.    As the result of intensive investigation and the careful review and aggregation of public data from several different sources, Ms. Lesko identified defendants and others as perpetrators of PPP loan fraud who had fraudulently received, and been forgiven for, such loans.

83.    Relator now brings this action on behalf of the United States of America to recover the damages caused by Defendants' fraud against the PPP program and the SBA.

## V.    CAUSES OF ACTION
### COUNT I
### FALSE CLAIMS ACT – PRESENTATION OF FALSE CLAIMS

84.    The preceding paragraphs are incorporated.

85.   Relator brings this civil action on behalf of the United States of America against Defendants under the False Claims Act, 31 U.S.C. §§ 3729-33.

86.   During the relevant period, Defendants knowingly presented or caused to be presented materially false or fraudulent claims for payment to the United States, through the Small Business Administration, in violation of 31 U.S.C. § 3729(a)(1)(A).

87.   Defendants did so by knowingly presenting or causing to be presented applications for approval of PPP loans for which they were ineligible.

88.   Defendants' knowingly false certifications on their PPP loan applications were material to the government's decision to award them PPP loans. When submitting a PPP loan application, an applicant was required to certify that it was eligible, and that all information included in the application form was true and accurate in all material respects.

89.   Defendants had actual knowledge of the falsity of their claims or deliberately ignored or recklessly disregarded their truth or falsity, within the meaning of the FCA.

90.   But for Defendants' submission of these false claims, the SBA would not have approved the loans or paid the lenders the processing fee for the loan applications.

91.    The United States suffered damages because of the false claims that Defendants made or caused to be made and is entitled to recover its losses and to obtain other relief available under the FCA, including treble damages and civil penalties.

## COUNT II

### FALSE CLAIMS ACT – CREATING A FALSE RECORD OR STATEMENT MATERIAL TO A FALSE CLAIM

92.    The preceding paragraphs are incorporated.

93.    Defendants knowingly made or caused to be made false records or statements to support false claims submitted to the SBA in violation of 31 U.S.C. § 3729(a)(1)(B).

94.    Defendants' creation of knowingly false loan applications supported the lenders' claims to the SBA for loan-processing fees for loans that were falsely or fraudulently obtained by Defendants.

95.    Defendants had actual knowledge of the falsity of these records and statements or deliberately ignored or recklessly disregarded their truth or falsity, within the meaning of the FCA.

96.    The United States suffered damages because of the false records and statements that Defendants made, used, and caused to be made and used, and is entitled to recover its losses and to obtain other relief available under the FCA, including treble damages and civil penalties.

## COUNT III

## FALSE CLAIMS ACT – IMPROPER AVOIDANCE OF OBLIGATION TO GOVERNMENT

97.    The preceding paragraphs are incorporated.

98.    Defendants knowingly concealed or knowingly and improperly avoided their obligations to pay or transmit money or property to the government in violation of 31 U.S.C. § 3729(a)(1)(G).

99.    Defendants did so by falsely certifying compliance with the PPP program in applying for forgiveness of their PPP loans and by failing to repay the PPP loans they received.

100.  But for Defendants' concealment, the SBA would not have forgiven Defendants' obligation to repay the PPP loans, including interest.

101.  The United States suffered damages because of these misrepresentations and is entitled to recover its losses and to obtain other relief available under the FCA, including treble damages and civil penalties.

## VI.   JURY DEMAND

102.  Relator respectfully demands a trial by jury.

## VII.  PRAYER

103.  Relator respectfully requests the following relief:

    (a)    That judgment be entered in favor of the United States and Relator and against Defendants in the amount of all damages

COMPLAINT                                                                                                       31

sustained because of Defendants' actions, multiplied by three as provided by 31 U.S.C. § 3729(a), plus a civil penalty for each and every such claim in the amount of between $13,508 and $27,018 per claim;

(b)  That Relator be awarded the maximum amount permissible under 31 U.S.C. § 3730(d), including the costs and expenses of this action and reasonable attorneys' fees;

(c)  That, pursuant to 31 U.S.C. § 3730(c)(5), Relator be awarded a share of any alternate remedy that the United States elects to pursue;

(d)  That permanent injunctive relief be granted to prevent any recurrence of the False Claims Act conduct described above for which redress is sought in this Complaint;

(e)  That the United States and Relator be awarded prejudgment and post-judgment interest; and

(f)  That the United States and Relator receive all such other and further relief, at law or in equity, to which they show themselves to be justly entitled.

DATED:  April 2, 2024

Respectfully submitted,

/s/ Elizabeth K. Stepp
Elizabeth K. Stepp
Texas Bar No. 00788467
eks@federal-lawyer.com
**OBERHEIDEN P.C.**
440 Louisiana St., Suite 200
Houston, Texas 77002
(214) 334-7648 (Telephone)
(972) 559-3365 (Facsimile)
**ATTORNEYS FOR RELATOR**

COMPLAINT                                                                  33

JS 44 (Rev. 04/21) (TXND Mod)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States ex rel. Patricia Lesko | University of Dallas, et al. (see separate sheet) |

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Dallas**
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Elizabeth K. Stepp
Oberheiden, P.C.
440 Louisiana St., Suite 200, Houston, TX 77002   214-334-7648

Attorneys *(If Known)*

RECEIVED
APR - 9 2024

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| [X] 1   U.S. Government Plaintiff | [ ] 3   Federal Question *(U.S. Government Not a Party)* |
| [ ] 2   U.S. Government Defendant | [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [X] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | Product Liability | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | | | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 864 SSID Title XVI [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 550 Civil Rights [ ] 555 Prison Condition [ ] 560 Civil Detainee - Conditions of Confinement | [ ] 465 Other Immigration Actions | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| [X] 1 Original Proceeding | [ ] 2 Removed from State Court | [ ] 3 Remanded from Appellate Court | [ ] 4 Reinstated or Reopened | [ ] 5 Transferred from Another District *(specify)* | [ ] 6 Multidistrict Litigation - Transfer | [ ] 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.C. sec. 3729-33
Brief description of cause:
False Claims Act/PPP Loan Fraud

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
195,000,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [X] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*

JUDGE _____   DOCKET NUMBER _____

DATE
4/2/24

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

**DEFENDANTS:**

University of Dallas
Hendrix College
Ouachita Baptist University
The Masters University and Seminary
Husson University
Concordia University
Oklahoma Baptist University
Oklahoma Christian University
Mental Health Cooperative, Inc.
Bennington College Corporation
Beloit College
West Virginia Wesleyan College
Spring Hill College
Marcus Jewish Community Center of Atlanta Inc.
The Jewish Community Center of Greater Kansas City
Eastern Nazarene College
University of Jamestown
Limestone University
Education Success Network, Inc.
National Association on Drug Abuse Problems Inc.